Joshua Gilson
2480 Irvine Blvd, Apt 341
Tustin, CA 92782
joshua.gilson@gmail.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**




**JOSHUA GILSON,**
Plaintiff,

v.

**TUSTIN UNIFIED SCHOOL DISTRICT; SUPERINTENDENT GRANT LITFIN; DIRECTOR OF EDUCATION SERVICES STEPHANIE YANG; PRINCIPAL KATHI DENNY; TEACHER MARINA BARRIOS; TUSTIN UNIFIED SCHOOL BOARD MEMBER LYNN DAVIS; TUSTIN POLICE DEPARTMENT; and DOES 1-10,**
Defendants.

Case No.: 8:25-cv-00227-SB-(PD)

Amended
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1. **Violation of Civil Rights (42 U.S.C. § 1983)**
2. **Violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.**
3. **Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794**
4. **Intentional Infliction of Emotional Distress (IIED)**
5. **Negligence & Gross Negligence**
6. **Violations of California Education Code**

**JURY TRIAL DEMANDED**

---

## INTRODUCTION

1. Plaintiff Joshua Gilson files this **First Amended Complaint** to correct the identity of the law enforcement agency involved in the events described herein. **Through the administrative recourse process**, Plaintiff learned that the Tustin Police Department, not the Orange County Sheriff's Department, was responsible for the wrongful arrest and other actions described in this complaint. All other allegations and claims in the original complaint remain unchanged.

2. Plaintiff **Joshua Gilson** brings this action to challenge the **racial discrimination, wrongful arrest, disability discrimination, and interference with parental rights**

**perpetrated by the Tustin Unified School District (TUSD) and the Tustin Police Department** against himself and his minor daughter (hereinafter referred to as "Plaintiff's minor daughter"). Plaintiff is a disabled veteran and identifies as a Jew, an identity that encompasses both racial and ethnic dimensions.

3. The Tustin Unified School District and the Tustin Police Department enforce a radical and unconstitutional interpretation of a racial classification statute, which mandates that **all citizens must select one of only 18 state-approved racial categories or be refused public education registration and face arrest.**

4. **Plaintiff was explicitly told that he and his daughter's Jewish identity were not acceptable** and that he must select one of the state's predetermined categories or be denied school registration.

5. Plaintiff's minor daughter was denied access to an equal education due to overt discrimination demonstrated by the combined statements and actions of Tustin Unified School District employees, school board members, and the Tustin Police Department, and continued denial of justice through corrupting existing administrative remedies that have been exhausted to include:

- Parent conference with teacher, which was denied.
- Requested to supervise in class, which was denied.
- Mediation, which the school promised then denied.
- Uniform Complaint Process.
- Tustin Police Department personnel complaint form.

---

**PARTIES**

6. Plaintiff Joshua Gilson is a resident of Orange County, California, and the father of a minor child enrolled in TUSD. He is a disabled veteran and identifies as a Jew, **an identity that is both racial and ethnic.**

7. Defendant Tustin Unified School District (TUSD) school board member, **Lynn Davis** is a member of the school board and is sued in his individual and official capacities.

8. Defendant **Grant Litfin** is the Superintendent of TUSD and is sued in his individual and official capacities.

9. Defendant **Kathi Denny** is the Principal of the school where Plaintiff's minor daughter is enrolled and is sued in her individual and official capacities.

10. Defendant **Marina Barrios** is a teacher at the school and is sued in her individual and official capacities.

11. Defendant **Stephanie Yang** is a TUSD employee responsible for investigating complaints under the district's Uniform Complaint Process (UCP) and is sued in her individual and official capacities.

12. Defendant **TUSD is** a public school district in Orange County, California, responsible for the administration of public schools within its jurisdiction.

13. Defendant **Tustin Police Department** is a law enforcement agency responsible for policing in Tustin, including TUSD properties.

14. Defendants DOES 1-10 are individuals or entities whose identities are currently unknown but who participated in the events described herein.

---

**FACTUAL ALLEGATIONS**

15. For the **month prior** to Tustin Ranch Elementary school starting on August 13, 2024, Plaintiff attempted to register his minor daughter online and **called district staff multiple times to seek a resolution**. Despite repeated efforts to comply with legal registration requirements, **Plaintiff was denied a path forward unless he selected a state-approved racial category.**

16. Even after Plaintiff's minor daughter missed her first day of school, TUSD officials continued to refuse registration, stating that if Plaintiff and his daughter **wished to "remain Jews," they would have to wait** until the next scheduled conference with the company that operates the district's registration website, effectively **blocking registration.**

17. On August 14, 2024, Plaintiff attempted to register his minor daughter for school in person at TUSD. However, Plaintiff was again informed that his daughter **would not be registered** unless he selected one of the **18 state-approved racial categories.**

18. Plaintiff explained that he and his daughter identify as Jews, and that Jewish identity is not recognized under the state's racial classification system. **Plaintiff was then explicitly told by Superintendent Grant Litfin, "Just pick a different race."** When

asked what race they should select, TUSD and Tustin Police Department officials were not able to answer, knowing that I was not represented on the form. **TUSD officials denied his daughter's registration and refused to allow her to attend school.**

19. This repeated response was not just unreasonable—it was **outright discriminatory, offensive, and a blatant violation of Plaintiff's constitutional rights.** By forcing Plaintiff and his daughter to bear the full burden of bureaucratic delays solely because of their Jewish identity, TUSD and the Tustin Police Department demonstrated a shocking double standard: **while all other families were granted immediate school enrollment,** Plaintiff was singled out and punished **for refusing to conform to an unconstitutional racial classification system.**

20. **This is not how a public institution entrusted with educating children should operate.** It is how a system of exclusion and prejudice operates, one that prioritizes bureaucratic convenience over fundamental rights and human dignity. The fact that TUSD and the Tustin Police Department officials saw no issue with this blatant inequity speaks volumes about their priorities—and their willingness to sacrifice fairness and equality for the sake of enforcing an archaic and discriminatory system.

21. **Unlike most modern demographic forms, which provide the ability to skip racial classification or select "Other," these standard alternatives were deliberately removed from TUSD's system, leaving no ability for Plaintiff to accurately self-identify or register his child** without inaccurate state-mandated racial classification. This effectively **erases all non-approved races from being represented in planning or funding decisions based on this false demographic information.**

22. The **deliberate erasure of select races and cultures** from demographic representation by TUSD and the Tustin Police Department is not merely an administrative oversight—**it is a calculated act of institutionalized bigotry.** This erasure **denies entire communities their identity, equal funding, and equal access to education,** perpetuating a system of exclusion that is as archaic as it is **unconstitutional.**

23. TUSD employees, who are **professionally trained** to understand the importance of diversity and inclusion, instead **used their knowledge to actively strip a disabled veteran of his constitutional rights**—simply because he identifies in a way they found inconvenient or offensive. Rather than upholding their duty to serve the community with education, they weaponized their authority to enforce a discriminatory racial classification system, **demonstrating a shocking disregard for the principles they are sworn to uphold.**

24. **The message from TUSD and the Tustin Police Department is clear: identifying as a Jew—or any other non-approved race or ethnicity—will be met with threats of lethal force, immediate arrest, and the wholesale removal of rights and freedoms.** This is not the behavior of a modern, inclusive society; it is the behavior of a system that has learned nothing from history and is content to repeat its most shameful mistakes.

25. The fact that **TUSD and the Tustin Police Department employees**, who are ostensibly **educated professionals,** chose to enforce such a system is not just a failure of leadership—**it is a stain on their credibility and a betrayal of the public trust.** Their actions are a stark reminder that, especially right now, bigotry can still masquerade as policy, and those in power can still wield it with impunity.

26. When Plaintiff refused to comply with this forced racial recategorization, TUSD officials escalated the situation by calling the Tustin Police Department.

27. Officers from the **Tustin Police Department**, wearing **military-style body armor** and carrying **lethal weapons**, entered the district office, explained a **Jim Crow-era** statute that justified the arrest for Plaintiff not choosing an approved race, and arrested Plaintiff in front of district staff and employees.

28. During Plaintiff's detention and arrest, **Tustin Police Department officers recited aloud outdated California guidance** concerning racial classification, **attempting to justify their arrest**. Officers **did not cite trespassing** as a justification until after Plaintiff was already in custody.

29. The **Tustin Police Department's** actions in this case reflect a **systemic failure to uphold constitutional rights** and protect individuals from racial discrimination. The officers' reliance on an outdated, **Jim Crow-era** statute to justify Plaintiff's arrest demonstrates a **deliberate disregard for clearly established legal principles** and a **willingness to enforce unconstitutional policies**. This incident is not an isolated occurrence but part of a **broader pattern of discriminatory practices within law enforcement agencies.** The Tustin Police Department's refusal to acknowledge the unlawfulness of their actions underscores the need for **systemic reform** to prevent future violations of civil rights.

30. Plaintiff's wrongful arrest fits into this **established pattern of racial discrimination** within the Police Departments, reinforcing that this was not an isolated incident but **a systemic issue.**

31. Defendants, including the **Tustin Police Department** and its officers, **are not entitled to qualified immunity** because their actions violated Plaintiff's **clearly established constitutional rights.** During Plaintiff's arrest, the officers explicitly referenced the historical role of law enforcement in supporting school integration, including the protection of Ruby Bridges during the Civil Rights Movement. This discussion demonstrates that the **officers were fully aware** of their duty to uphold constitutional rights and **prevent racial discrimination.**

32. **Despite this awareness,** the officers chose to act in **direct opposition** to their historical role by **enforcing an unconstitutional racial classification system** and arresting Plaintiff for refusing to select a state-approved racial category. Their actions were not only a violation of Plaintiff's rights under the Equal Protection Clause, but also a **deliberate rejection of the principles of equality and non-discrimination** that law enforcement is sworn to protect.

33. The officers' **knowledge of this history,** combined with their **conscious decision to enforce racial exclusion**, underscores that they acted with **reckless disregard** for **clearly established constitutional rights.** Therefore, **Defendants are not entitled to qualified immunity,** and Plaintiff is entitled to relief for the violations of his constitutional rights.

34. TUSD Board Member **Lynn Davis** was **directly informed** of Plaintiff's concerns through email correspondence **in real time** beginning before the arrest on August 14, 2024. Instead of responding appropriately to a clear case of racial discrimination and misconduct, **Mr. Davis immediately responded with hostility and false information.**

35. **Rather than acting in his official capacity** to investigate the situation or offer a path to resolution, **Mr. Davis deliberately removed the discussion from his official school board account** and responded instead from his personal email, an action that suggests a **conscious attempt to evade public accountability** and shield the district from liability **while degrading a parent** who was simply asking for help.

36. Plaintiff's intent was to inform the school board so that they could take corrective action, yet instead of leadership and accountability, Mr. Davis sought to **"put Plaintiff in his place."** His reaction exemplifies the **systemic retaliation** within TUSD **against parents** who challenge racial discrimination, further proving that the district's policies are not merely flawed, but **intentionally designed to suppress, silence, and punish dissent.**

37. The next day, on August 15, 2024, **Superintendent Litfin** met with Plaintiff and **admitted in a recorded meeting** that Plaintiff **should not have been arrested** and that **he deeply regretted his actions the prior day.** Litfin stated, **"This isn't TUSD!"** an apparent attempt to distance the district from its own standardized discriminatory actions wishing them to be written off as flukes. **Litfin then personally registered Plaintiff's minor daughter by writing her name down** and sending her to class, proving that **her exclusion had never been a legal or procedural issue**, but rather a **discriminatory enforcement of state racial categorization.**

38. After Plaintiff made it known that **legal follow-up would be necessary** to change these procedures, **Grant Litfin and TUSD reversed course** and **refused to drop the charges against Plaintiff.** TUSD then continued to **obstruct** and **retaliate** against him for challenging the **district's discriminatory actions.**

39. The Tustin Police Department does not provide the public with an accurate history of its actions related to racially motivated misconduct over the past decade. The **Tustin Police Department's shocking ability** to **recite outdated racial classification rules verbatim** to justify the arrest, **while simultaneously failing to understand basic trespassing laws**, further demonstrates that **racial discrimination** is not incidental but a **systemic practice within the department.**

40. Plaintiff's minor daughter's mother, Alisha Gilson, is not only a **non-custodial** parent residing in another state, but she has specifically **had her educational and medical rights stripped** from her due to her previous actions.

41. Elementary teacher **Marina Barrios** has denied Plaintiff **basic parenting rights,** including a **parent-teacher conference,** which was canceled at the direct request of Alisha Gilson, despite the fact that:

a. Plaintiff has **sole physical custody and joint legal custody.**

b. Alisha Gilson has **no legal right to make educational decisions** for Plaintiff's minor daughter.

42. **Marina Barrios** has taken an **improper and inappropriate personal interest** in Plaintiff's minor daughter, attempting to **force her to change family projects** to be **focused on her non-custodial mother** and reportedly **taking pictures of Plaintiff's minor daughter** despite a **no-picture contract signed** at the school and special security concerns.

43. **Marina Barrios** shows **discriminatory behavior** and **unequal treatment**.

a. Marina Barrios prioritized communication with Plaintiff's minor daughter's mother while disregarding or **deprioritizing communication** with her Jewish father, Plaintiff.
b. She has been less transparent with Plaintiff compared to other parents, **creating an unfair and discriminatory dynamic.**

44. **Marina Barrios shows deception** regarding Plaintiff's minor daughter's school project.
a. Initial Misrepresentation: After a phone call with Plaintiff's minor daughter's non-custodial mother, Alisha Gilson, Marina Barrios told Plaintiff's minor daughter that she could not present her family project until she received pictures from Alisha.
b. Plaintiff's minor daughter came home from school upset or crying multiple days in a row due to being told by **Marina Barrios** that she **couldn't present her family project until she changed it to be about her mother.**
c. When questioned by Plaintiff, **Marina Barrios falsely denied** the phone call with Alisha, the instruction to Plaintiff's minor daughter about waiting for pictures, and about why the project wasn't immediately presented.
d. The **principal confirmed** that **emails and pictures were received on the school's servers**, **contradicting Marina Barrios' claim** that **no such communication occurred.**

45. **Marina Barrios** participated in **intentional misrepresentation to cover up conduct**.
a. Marina Barrios attempted to conceal her misleading statements by allowing Plaintiff's minor daughter to present her project without opening the pictures from Alisha—**an implicit acknowledgment that she had previously misled Plaintiff's minor daughter and Plaintiff.**
b. **The teacher's changing story and contradictions** suggest deliberate efforts to avoid accountability for her actions.

46. **Marina Barrios** shows **bypassing court-ordered communication restrictions**.
a. The court limited Alisha's ability to communicate with Plaintiff, yet **Marina Barrios facilitated communication through indirect means, allowing Alisha to improperly influence classroom matters.**
b. When **Plaintiff raised concerns** about this, the **school altered its communication policies in a retaliatory manner, restricting his access to information** about Plaintiff's minor daughter's education.

47. **Marina Barrios** participated in retaliatory actions and weaponized communication policies.

a. When Plaintiff asked for transparency about the situation, school officials, including Marina Barrios, shifted communication protocols in a manner that effectively **punished him for making a complaint.**

b. **This resulted in delayed responses, lack of transparency, and increased obstacles** in Plaintiff's ability to advocate for Plaintiff's minor daughter's education.

48. Marina Barrios participated in failure to maintain a fair and unbiased learning environment:

a. Marina Barrios' conduct caused emotional distress to Plaintiff's minor daughter, who was caught between conflicting instructions from her teacher and Plaintiff.

b. The teacher's favoritism toward Alisha and failure to act impartially created an unfair learning environment, negatively impacting Plaintiff's minor daughter's confidence and educational experience.

49. Failure to address misconduct by Marina Barrios:

a. Kathi Denny, as the principal of Plaintiff's minor daughter's school, was made aware of Marina Barrios' deceptive conduct regarding Plaintiff's minor daughter's school project and the false statements made to Plaintiff.

b. Despite receiving evidence that contradicted Marina Barrios' statements—including confirmation that emails and pictures existed on the school's server—Kathi Denny failed to take corrective action or hold Marina Barrios accountable.

50. Retaliatory enforcement of communication restrictions against Plaintiff:

a. Plaintiff was subject to an agreed-upon communication plan with the school, which allowed him to receive educational updates about Plaintiff's minor daughter.

b. When Plaintiff raised concerns about Marina Barrios' dishonesty and asked for transparency, Kathi Denny unilaterally altered the communication policy in a manner that limited Plaintiff's access to information about his daughter.

c. The change in communication protocol was retaliatory and designed to punish Plaintiff for raising legitimate concerns about the school's handling of the situation.

51. Facilitation of court order violations:

a. The court limited Alisha's ability to communicate with Plaintiff, yet Kathi Denny knowingly allowed school staff, including Marina Barrios, to bypass this restriction by prioritizing Alisha's input while diminishing Plaintiff's role as a custodial parent.

b. By failing to enforce neutral and balanced communication with both parents, Kathi Denny effectively aided in violating the spirit of the court order, allowing Alisha to exert undue influence over school matters.

52. Failure to provide transparency and due process:
a. When Plaintiff requested an explanation for Marina Barrios' actions and asked for an acknowledgment of the deception, Kathi Denny ignored the inconsistencies and refused to provide a reasonable justification.
b. Kathi Denny's refusal to properly address the situation or ensure transparency demonstrates a pattern of obstruction and concealment rather than good-faith engagement with Plaintiff's concerns.

53. Discrimination and unequal treatment toward Plaintiff:
a. Kathi Denny allowed a pattern of behavior where Plaintiff, as a Jewish father, was treated unfairly compared to other parents.
b. Kathi Denny's refusal to allow Plaintiff to supervise the classroom to ensure his daughter's health and safety is still unjustified by Kathi Denny and District officials.
c. The school's preferential treatment of Alisha, combined with the suppression of Plaintiff's parental involvement, contributed to a discriminatory environment that harmed Plaintiff and Plaintiff's minor daughter.

54. Hindrance of Plaintiff's ability to advocate for his daughter:
a. The school's refusal to cooperate with Plaintiff's efforts to obtain truthful and transparent information regarding Plaintiff's minor daughter's education created a chilling effect on Plaintiff's ability to engage in his daughter's schooling.
b. The actions taken under Kathi Denny's leadership made it increasingly difficult for Plaintiff to ensure Plaintiff's minor daughter's best interests were protected, causing emotional distress to both Plaintiff and Plaintiff's minor daughter.

55. TUSD's refusal to allow Plaintiff access to educational meetings about his daughter further demonstrates its ongoing efforts to obstruct and interfere with his custodial rights.

56. TUSD's actions demonstrate a pattern of systemic discrimination against Jewish individuals and disabled persons, as evidenced by its refusal to accommodate Plaintiff's disability during the UCP process.

57. After Plaintiff filed a Uniform Complaint Process (UCP) complaint regarding racial discrimination and retaliation, Defendant Stephanie Yang, the designated UCP administrator, engaged in active obstruction by:
a. Refusing to provide Plaintiff with the disability accommodations required under the ADA and Section 504.

b. Insisting the UCP process be conducted in a way that disadvantaged Plaintiff as a disabled veteran.
c. Attempting to shield the district from accountability rather than conducting a fair investigation.

58. TUSD's, and particularly Stephanie Yang's, failure to allow a fair and accessible complaint process demonstrates that its discriminatory actions are not isolated incidents, but a defining feature of the district's operations.

59. Despite **Superintendent Grant Litfin's** hollow assertion that **"This isn't TUSD, this isn't how we act,"** the evidence speaks for itself. The systemic discrimination, the wrongful arrest, the denial of equal education, and the blatant disregard for constitutional rights all point to one undeniable truth: **This is, in fact, TUSD.**

---

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

Violation of Civil Rights (42 U.S.C. § 1983)

60. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

61. Defendants, acting under color of state law, deprived Plaintiff of his rights under the First and Fourteenth Amendments to the United States Constitution, including his rights to:
a. Equal Protection under the law, free from racial and ethnic discrimination.
b. Due Process, including the right to be free from arbitrary and discriminatory government action.
c. Parental rights, including the right to direct the education and upbringing of his minor daughter.

62. Defendants' actions, including the enforcement of an unconstitutional racial classification system, the wrongful arrest of Plaintiff, and the interference with his custodial rights, were intentional, reckless, and in violation of clearly established constitutional rights.

63. As a direct and proximate result of Defendants' actions, Plaintiff suffered emotional distress, reputational harm, and interference with his parental rights.

**SECOND CLAIM FOR RELIEF**

Violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.
64. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

65. Plaintiff is a disabled veteran and qualifies as an individual with a disability under the ADA.

66. Defendants, including Stephanie Yang and TUSD, discriminated against Plaintiff by:
a. Refusing to provide reasonable accommodations during the Uniform Complaint Process (UCP).
b. Failing to ensure equal access to educational services and benefits for Plaintiff and his minor daughter.

67. Defendants' actions violated the ADA, which prohibits discrimination on the basis of disability in public services and programs.

68. As a direct and proximate result of Defendants' actions, Plaintiff suffered emotional distress, financial harm, and denial of access to educational services.

**THIRD CLAIM FOR RELIEF**
Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794
69. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

70. Plaintiff is a disabled veteran and qualifies as an individual with a disability under Section 504 of the Rehabilitation Act.

71. Defendants, including TUSD and its employees, denied Plaintiff equal access to educational services and benefits on the basis of his disability by:
a. Refusing to provide reasonable accommodations during the UCP process.
b. Failing to ensure that Plaintiff could fully participate in his minor daughter's education.

72. Defendants' actions violated Section 504, which prohibits discrimination on the basis of disability in programs receiving federal financial assistance.

73. As a direct and proximate result of Defendants' actions, Plaintiff suffered emotional distress, financial harm, and denial of access to educational services.

**FOURTH CLAIM FOR RELIEF**

Intentional Infliction of Emotional Distress (IIED)

74. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

75. Defendants' conduct, including the wrongful arrest of Plaintiff, the enforcement of an unconstitutional racial classification system, and the interference with his parental rights, was extreme and outrageous.

76. Defendants acted with reckless disregard for the probability that their conduct would cause Plaintiff severe emotional distress.

77. As a direct and proximate result of Defendants' actions, Plaintiff suffered severe emotional distress, humiliation, and mental anguish.

**FIFTH CLAIM FOR RELIEF**

Negligence & Gross Negligence

78. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

79. Defendants owed Plaintiff a duty of care to ensure that his constitutional and statutory rights were protected and that he was not subjected to discrimination, wrongful arrest, or interference with his parental rights.

80. Defendants breached this duty by:

a. Enforcing an unconstitutional racial classification system.
b. Failing to provide reasonable accommodations for Plaintiff's disability.
c. Wrongfully arresting Plaintiff and interfering with his custodial rights.

81. Defendants' actions constituted negligence and gross negligence.

82. As a direct and proximate result of Defendants' actions, Plaintiff suffered emotional distress, financial harm, and interference with his parental rights.

**SIXTH CLAIM FOR RELIEF**

Violations of California Education Code

83. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

84. Defendants violated provisions of the California Education Code, including but not limited to:

a. The right of parents to participate in their children's education.

b. The prohibition against discrimination in public schools.

85. As a direct and proximate result of Defendants' actions, Plaintiff suffered emotional distress, financial harm, and denial of access to educational services.

---

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Joshua Gilson respectfully requests that this Court grant the following relief:

1. Compensatory damages for emotional distress, reputational harm, financial losses, and other harms suffered by Plaintiff and his minor daughter.
2. Punitive damages against individual defendants for their intentional, reckless, and malicious conduct.
3. Injunctive relief requiring Defendants to:

a. Reform TUSD's racial classification system to ensure compliance with federal and state law.

b. Provide reasonable accommodations for disabled individuals, including Plaintiff, in all district processes, without barriers.

c. Cease all discriminatory practices and interference with parental rights.

4. Attorney's fees and court costs under 42 U.S.C. § 1988, the ADA, the Rehabilitation Act, and other applicable laws.
5. Any other relief the Court deems just and proper.

---

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

---

SIGNED AND DATED:

06 Feb 2025

Joshua Gilson, Plaintiff, Pro Se